JENNIE SAUNDERS, Plaintiff-Appellant, v. THE DEPARTMENT OF
PUBLIC AID *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—0312

Opinion filed May 18, 1990.

Mary D. Aversano, of Grabowski & Clutts, of Evanston, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William D. Leslie, Special Assistant Attorney General, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Jennie Saunders, appeals from a judgment of the circuit court dismissing her complaint for administrative review of a decision by the defendants, the Illinois Department of Public Aid (Department) and the Director of the Department.

On December 7, 1987, the plaintiff filed a request for medical assistance with the Department. On February 11, 1988, the defendants denied the plaintiff's request due to an alleged lack of cooperation in disclosure and verification of income by the plaintiff.

On April 11, 1988, the plaintiff filed an administrative notice to appeal; a hearing was conducted on May 27, 1988; and on June 6, the defendants affirmed the denial of the plaintiff's request in a final administrative decision. The plaintiff filed a complaint for administrative review of the Department's decision on July 14, 1988. Ill. Rev. Stat. 1985, ch. 110, par. 3—101 et seq.

The defendants moved to dismiss the complaint contending that it had been filed beyond the 35-day period for judicial review of administrative decisions. (Ill. Rev. Stat. 1985, ch. 110, par. 3—103.) After a hearing the judge dismissed the complaint on the ground that it was not timely filed. He subsequently denied the plaintiff's motion to reconsider. The plaintiff contends that the judge's finding is not supported by the evidence.

The statute in issue provides, in part, as follows:

"Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby. *** [A] decision shall be deemed to have been served either when personally delivered or when deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected thereby at his or her last known residence or place of business." Ill. Rev. Stat. 1987, ch. 110, par. 3—103.

The defendants claimed in their motion to dismiss that the deci-

sion was mailed to the plaintiff and to her attorney on January 6, 1988, and that the complaint was filed 39 days later. In support of the motion the defendants attached a certificate of mailing of a Department employee, Zina Bland, in which she swore that copies of the decision "were placed in separate envelopes addressed to" the defendant and her lawyer and were deposited in the mail by Bland "in the regular course of her duties as Clerk II employed by the Illinois Department of Public Aid."

In her response to the motion to dismiss, the plaintiff contended that Bland's certificate of mailing was false. In support of that contention the plaintiff attached a memorandum that the Department had prepared in an unrelated circuit court case. In that unrelated case the Department had submitted affidavits of three employees of the Department describing the procedure used by the Department on March 17, 1988, in mailing administrative decisions.

The defendants filed a reply memorandum in support of their motion and included an affidavit of Zina Bland which is as follows:

"1) On June 6, 1988, I was employed as a Clerk II by the Illinois Department of Public Aid ('IDPA') at 624 South Michigan Avenue, Chicago, Illinois.

2) Among my duties as a Clerk II was preparation for mailing of Final Administrative Decisions rendered by IDPA's Assistant Hearing Section.

3) Customarily Final Administrative Decisions ready for mailing would be put on my desk by Dewey Young, Policy Reviewer.

4) In the course of preparing a Final Administrative Decision for mailing, I would check to see whether the pages of the decision were in order, whether the appellant's address on the cover letter accompanying the decision was correct, stamp the current date on the cover letter, photocopy the decision for other persons entitled to copies, address envelopes directed to all persons entitled to receive copies of the decision, and put all the copies of the decision in the envelopes.

5) As I prepared each day's Final Administrative Decisions for mailing, I would simultaneously log the decisions on the daily affidavit of mailing, which would subsequently be attested to and notarized.

6) If the day's Final Administrative Decisions were ready for mailing prior to 3:40 p.m., the envelopes containing them would be given to another IDPA employee for transferral to IDPA's central mail room. If, however, the day's Final Adminis-

trative Decisions were not ready for mailing prior to 3:40 p.m., I would personally transfer the envelopes containing them to IDPA's central mail room.

7) I affirm that the document attached to this affidavit is a true and correct copy of the affidavit of mailing I filled out on June 6, 1988. This affidavit records those Final Administrative Decisions I prepared for mailing on June 6, 1988.

8) The name of Jennie Saunders appears as the twelfth name on my affidavit of mailing for June 6, 1988. This entry indicates that, on June 6, 1988, I prepared a Final Administrative Decision for mailing to Ms. Saunders, dated the decision's cover letter June 6, 1988, put the decision in an envelope addressed to Ms. Saunders at her address of record, and put another copy of the decision in an envelope addressed to her attorney, Ruth Watson, of the law firm of Hayt, Hayt and Landau, and had both envelopes containing the decisions transferred to the IDPA's central mail room."

Attached to that affidavit was another affidavit of Zina Bland which was sworn to on June 7, 1988, in which she said that on June 6, 1988, she "mailed" 12 letters with copies of findings of fact and decisions. The second affidavit contained the appeal numbers and the names and addresses of each of the persons to whom the letters were to be sent. The plaintiff was the last name listed.

■ The applicable rule provides that mere evidence of office custom, standing alone, is insufficient to establish a date of mailing. Rather, when the defendant, who has the burden of proof, relies on office custom, the law requires evidence of corroborating circumstances to show that the custom has been followed. *Kocourek v. Bowling* (1981), 96 Ill. App. 3d 310, 421 N.E.2d 397.

The issue in this appeal is whether the defendants proved the date of mailing. Before beginning a discussion on the merits of the case, however, we wish to express our disfavor for some of the arguments advanced by the plaintiff. In the trial court the plaintiff argued that the defendants failed to prove that the decision was mailed at all, and, alternatively, that the defendant failed to prove that the decision was mailed on June 6, 1988. The defendants argued that corroborating evidence of mailing "was the simple fact that the plaintiff did file a complaint for administrative review" proving "that she did receive the Department's final administrative decision absent any evidence to the contrary." Thus, the defendants put the plaintiff on notice of what should have been already obvious to the plaintiff—its own complaint showed that she had received the decision.

In spite of that additional notice, the plaintiff persisted in her opening brief in this court in arguing that there was no evidence of mailing, let alone evidence of mailing on June 6. After the defendants, in their brief, again called attention to the fact that the complaint showed that the plaintiff had received the decision, the plaintiff, in her reply brief and in oral argument, belatedly abandoned any claim that there was no evidence of mailing. She now agrees that the sole issue is whether the evidence shows that the mailing took place on June 6.

The plaintiff has also argued that the affidavits for the other three employees, which the plaintiff introduced from an unrelated case, establish only what the procedures were on March 17, 1988, and not on June 6, 1988. That argument is not consistent with the purpose for which the plaintiff offered the affidavits. They were offered by the plaintiff specifically in an attempt to show that what Zina Bland said she did on June 6 was false. It necessarily follows that the plaintiff was telling the court that the procedures followed on March 17, 1988, were the same procedures followed by the Department on June 6. It would unnecessarily lengthen this opinion to set forth the contents of those three affidavits. Suffice it to say that they establish the office custom of the defendants on June 6. Even if we were to conclude that they did not, we deem the second affidavit of Zina Bland to be sufficient to establish office custom. The issue, therefore, is reduced to this question: Did the defendants establish corroborating circumstances to show that the custom had been followed?

The plaintiff relies principally on *Commonwealth Edison Co. v. Property Tax Appeal Board* (1978), 67 Ill. App. 3d 428, 384 N.E.2d 504, *Kocourek v. Bowling* (1981), 96 Ill. App. 3d 310, 421 N.E.2d 397, and *M.S. Kaplan Co. v. Cullerton* (1977), 49 Ill. App. 3d 374, 364 N.E.2d 381.

In *Commonwealth Edison*, an employee submitted two affidavits. In the first, she said that she had "caused" copies of the decision to be deposited in the mail on a certain date. In the second, she said that she mailed the decision to the parties "in the usual course of business." The court held that her first affidavit that she "caused" the mailing was a conclusion and that the second affidavit was in violation of Supreme Court Rule 191(a). (107 Ill. 2d R. 191(a).) Consequently the court ruled that the affidavits were insufficient to justify a summary disposition and remanded the case for an evidentiary hearing.

We think that the case is helpful to the defendants' position here, rather than the plaintiff's, because factually it contains matters that are pointedly missing in this case. The plaintiff in *Commonwealth*

*Edison* submitted two affidavits; one stated that the decision had not been received by the plaintiff until five days after it had allegedly been mailed. The other affidavit alleged that the affiant had a conversation with the employee who had submitted the affidavit on behalf of the defendant. He said that the employee told him she had not personally mailed the decision but that she put copies of the decision in envelopes and placed those envelopes in an "out-box." The court held that the plaintiff's counteraffidavits rebutted what otherwise would be evidence corroborating the defendants' employee's affidavits. We emphasize that the plaintiff in this case provided no affidavits establishing the time she received the decision.

After the evidentiary hearing which had been ordered by the appellate court in *Commonwealth Edison,* the trial court again dismissed the complaint. In addition to testimony establishing office custom, the employee who had previously submitted an affidavit testified that the mail clerk collected letters from her out-box sometime before she left. *She specifically recalled the decision at issue because it was a "large" decision involving a lot of money and she knew it was important to get it out.* The court affirmed the dismissal despite the fact that no one was able to testify to the actual act of mailing. The court rejected the plaintiff's argument that proof was required that a deposit was made within a mail receptacle. *Commonwealth Edison Co. v. Property Tax Appeal Board* (1980), 86 Ill. App. 3d 414, 407 N.E.2d 1088.

In *Kaplan,* a taxpayer testified that he received a notice of a proposed increased assessment from the county assessor on April 14, 1972, informing him that a hearing was to have been held on April 3, 1972. Through his attorney the plaintiff requested a hearing but was refused.

An employee of the assessor testified that the records in his office indicated that the notice to the plaintiff was prepared on March 27, 1972, but he did not know who mailed the notice or when it was received by the plaintiff. The court held that the assessor failed to prove that it had mailed the notice in sufficient time to reach the plaintiff before the April 3 hearing. Factually, the *Kaplan* case is wide of the mark in this case. In addition to the paucity of proof on the part of the assessor, *there was testimony from the plaintiff that he received the notice 17 days after it had allegedly been mailed.*

In *Kocourek,* the defendant Department of Labor submitted three affidavits from employees in support of its motion to dismiss a complaint for administrative review. All three testified to the Department's procedure on March 29, 1979, the date the notice of decision was allegedly sent to the plaintiff. The complaint for administrative

review was filed 36 days after March 29. *None of the affiants claimed any personal recollection of the decision in issue.*

The plaintiff submitted an affidavit in which she stated that she received notice of the decision on March 31, 1979, and that she had discarded the envelope in which the decision was mailed; she did not recall whether or on what date it may have been post-marked. She was not cross-examined. The trial court denied the defendants' motion to dismiss, and the appellate court affirmed, making the pointed observation that the plaintiff's affidavit "sufficiently challenge[d] the conclusions of defendants' affidavits so as to create a question of fact as to the actual mailing date." *Kocourek*, 96 Ill. App. 3d at 313.

In sum, in all three cases cited by the plaintiff, the plaintiff submitted proof from which it could be inferred that the defendant had not mailed the decision on the date claimed by the defendant. In addition, in all three cases, there was an absence of proof that the persons responsible for mailing the decisions had any personal knowledge of the decision in issue.

In this case, Bland's second affidavit established her personal knowledge of the decision in issue in this case. We agree with the trial judge that her second affidavit constituted some corroboration of her first affidavit which, we repeat, established the office custom. Thus, her affidavits established that she put the decision in this case in an envelope on June 6 and either gave it to a clerk to be taken to the mail room or she took it to the mail room herself.

The plaintiff, of course, is correct that there is no direct proof that the decision was mailed on June 6. We emphasize, however, that the defendants' burden is not to prove the time of mailing beyond a reasonable doubt; it is sufficient if the proof shows that it is more probably true than not true that the decision was mailed on June 6. It is possible, but it is not reasonable, that the letter remained in the mail room for three days before being actually mailed. In our judgment the defendants' evidence was *prima facie* proof of mailing on June 6.

We have observed that the plaintiff, unlike the plaintiffs in the cases she cited, submitted no proof establishing the actual date of reception of the decision. We make the additional observation that the plaintiff did not produce the envelope containing the decision nor did she explain its absence, as did the plaintiff in *Kocourek*. Where a party fails to produce evidence in his control, the presumption arises that the evidence would be adverse to that party. (*Kane v. Northwest Special Recreation Association* (1987), 155 Ill. App. 3d 624, 508 N.E.2d 257.) The judge justifiably considered that failure to produce

in determining that the defendants had sufficiently established the date of mailing as June 6.

■ Although not controlling in our decision, we find the failure to produce the envelope further significant because the record shows that the same law firm representing the plaintiff in this case represented the plaintiff in the unrelated case to which we have referred; and, in that case, the plaintiff submitted copies of four decisions by the Department of Public Aid in which the envelopes containing the decisions bore later postal-meter dates than the dates on the cover letters accompanying the decisions.

For these reasons, we conclude that the judge's finding is not against the manifest weight of the evidence; the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.